# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

| | |
|---|---|
| KIMBERLY D. ALLEN, | Civil No. 10-4747 (JRT/JSM) |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER** |
| WILFORD & GESKE, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., FEDERAL NATIONAL MORTGAGE ASSOCIATION, SCOTT COUNTY MN SHERIFF, and ELIZABETH SOLL, | |
| Defendants. | |

---

Kimberly D. Allen, 6865 Cleary Place, Prior Lake, MN 55372, *pro se*.

Plaintiff Kimberly Allen ("Allen") seeks a temporary restraining order ("TRO") under Rule 65 of the Federal Rules of Civil Procedure to prevent the expiration of a stay of a writ of eviction from her home on November 30, 2010, which she alleges will be executed on December 2, 2010. The Court finds that it has jurisdiction in this case, but denies the motion because Allen has shown little likelihood of success on the merits of her claim at this stage and because, even if she does succeed, she can be adequately compensated with money damages.

Allen bought the home on a contract-for-deed from "an investor" named Elizabeth Soll ("Soll") in May 2007 by paying $7,000 as a down payment to Ron Barbieri

("Barbieri"), a realtor and owner of Principal Mortgage. (Mot. for TRO/Aff. of Kimberly Allen Ex. H, Docket No. 3.) From the current record, the Court cannot ascertain who was a party to the contract-for-deed. It is also unclear to the Court who holds the mortgage on the property. Allen has submitted documents suggesting that Mortgage Electronic Registration Systems, Inc. (MERS) is the nominee and mortgagee, and that the lender is "Greenpoint Mortgage Funding, Inc." (*Id.* Ex. C.) The same document states that the "borrower" is Soll. (*Id.*) However, Allen also states in her affidavit that the foreclosure documents served on her by Wilford & Geske, a law firm, listed Countrywide as the lender. (*Id.* ¶ 17.)

Foreclosure proceedings were instituted in December 2008. Allen alleges that prior to being served, she was making payments to Barbieri, who owned a "realty company, appraisal services, a mortgage company called Principal Mortgage, and a closing company."[1] (*Id.* ¶ 3.) Allen alleges that the down payment and other money she paid to Barbieri that were intended as payments for the house never went to Soll. Allen suggests that Barbieri is being investigated by the FBI, and has "absconded to his birth country in Central America." (*Id.*).

Allen states that she did not default on the loan, but stopped making payments to Barbieri when she became aware that "money was being stolen." (*Id.* ¶ 4.) However, Allen alleges she began making monthly rent payments to Soll in September 2009, making her a tenant. (*Id.* Ex. G.)

---

[1] Allen contradicts herself in her complaint, stating, "My monthly payment went to Wellspring Inc, Ms. Soll's LLC." (Compl. at 8, Docket No. 1.)

The house was advertised for sale at a sheriff's sale on September 10, 2009, with a redemption period ending March 10, 2010. Allen alleges that she attempted to purchase the home, but was unable to determine to whom to make an offer. Allen suggests that Vicki Schwartz, a realtor, identified the "purported title holder to be Fannie Mae." (*Id.* ¶ 8.)

An eviction proceeding was held in Scott County District Court ("state court") on August 31, 2010.[2] Allen subsequently moved to extend a stay of the writ of eviction, which was granted by the court on November 24, 2010, until November 30, 2010. (Order, Nov. 24, 2010, 70-CV-10-20162.)

## ANALYSIS

### I. JURISDICTION

As an initial matter, the Court must consider a jurisdictional issue. Allen asserts that the Court has federal question subject matter jurisdiction because she has stated claims under the fifth amendment, which protects against deprivations of property without due process of law. U.S. Const. amend. V. However, the fifth amendment only applies to actions of the federal government, not those of private actors, *Public Utils. Comm'n v. Pollak*, 343 U.S. 451, 461 (1952), while the fourteenth amendment's due process clause applies to the states, *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948). The standard for finding federal government action under the fifth amendment is the same as

---

[2] It is unclear from the district court's docket what occurred at the proceeding on August 31, 2010. However, the Court assumes that a motion for a stay of eviction proceedings was granted, as a subsequent proceeding extended an earlier, unidentified stay. (Order, Nov. 24, 2010, 70-CV-10-20162.)

that for finding state action under the fourteenth amendment. *See, e. g., Warren v. Gov't Nat. Mortg. Ass'n*, 611 F.2d 1229, 1232 (8th Cir. 1980). That standard is that there must exist "a sufficiently close nexus between the [government] and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the [government] itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974).

In this case, Allen has not suggested in what way any named defendant could be fairly treated as the government itself. However, federal question jurisdiction is conferred upon a federal court hearing a lawsuit involving the Federal National Mortgage Association ("Fannie Mae"). *See* 12 U.S.C. § 1723a(a) ("Each of the bodies corporate . . . . of this title shall have power to . . . sue and to be sued . . . in any court of competent jurisdiction, State or Federal . . . ."); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust ex rel. v. Raines*, 534 F.3d 779, 785-86 (D.C. Cir. 2008) (holding that the Fannie Mae "sue or be sued" statute confers federal subject-matter jurisdiction in Fannie Mae cases). Allen has named Fannie Mae as a defendant so the Court finds federal question jurisdiction.

## II.   INJUNCTIVE RELIEF

In determining whether a party is entitled to a temporary restraining order or other preliminary injunctive relief, the Court considers: (1) the probability that the movant will succeed on the merits; (2) the threat of irreparable harm to the movant; (3) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; and (4) the public interest. *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d

109, 113 (8th Cir. 1981). "[T]he question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.*

A. Likelihood of Success on the Merits

In evaluating the "probability of success on the merits," the Court need not discern with mathematical precision whether the plaintiff has a greater than fifty percent chance of prevailing. *Id.*

> The equitable nature of the proceeding mandates that the court's approach be flexible enough to encompass the particular circumstances of each case . . . . [W]here the movant has raised a substantial question [as to irreparable harm] and the equities are otherwise strongly in his favor, the showing of success on the merits can be less. . . .

*Id.*

Two factors weigh against a determination that Allen is likely to succeed on the merits. First, the state court has had this matter before it since August 2010. On November 24, 2010, the state court granted Allen's motion to extend the stay of a writ of eviction until November 30, 2010. (Order, Nov. 24, 2010, 70-CV-10-20162.) The state court has been addressing the issues raised in this case for nearly three months, and the Court can find no indication that the issues in the present motion differ from those in the state court proceeding. On the limited record before it, the Court is reluctant to second guess the state court's apparent determination that no further immediate action was warranted by Allen's claims, and this Court cannot hear appeals from the state court. Second, though some evidence suggests the possible existence of a colorable claim

against Wilford & Geske, or Barbieri, the complaint and motion do not adequately explain what that claim may be, or provide enough evidence to suggest at this time a likelihood of success on the merits. Because the Court is addressing what are presumably identical claims in state court, and because Allen's theory of the case is unclear, this Court finds that there is a limited likelihood of success on the merits, and this factor weighs against injunctive relief.

B. Irreparable Harm.

The second factor that the movant must establish is that irreparable harm will result if injunctive relief is not granted and that such harm will not be compensable by money damages. *See Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986). This Court recognizes that eviction from a home likely constitutes a significant harm; however, Allen has not suggested it is a harm that cannot be adequately compensated through an award of damages. *Follis v. Minn.*, Civ. No. 08-1348, 2008 WL 4151831, at *5 (D. Minn. June 30, 2008) (finding that other *Dataphase* factors could outweigh the harm of eviction when there was no complaint of imminent homelessness following eviction); *but see Hruby v. Larsen*, Civ. No. 05-894, 2005 WL 1540130, at *4 (D. Minn. June 30, 2005) (holding that "[i]f denying an injunction results in eviction, then the irreparable harm element is likely met" where plaintiffs' "ability to find suitable, affordable housing is questionable") (citing *Higbee v. Star*, 698 F.2d 945, 947 (8th Cir. 1983)); *see also Baumgarten v. Cty. of Suffolk*, 2007 WL 1490487, at *5 (E.D.N.Y. Feb. 20, 2007) added) ("Courts have found in certain circumstances that the threat of

eviction **and the realistic prospect of homelessness** constitute a threat of irreparable harm and satisfy the first prong of the test for preliminary injunction relief." (emphasis added)).

Though an eviction in this case constitutes a significant harm, Allen has not stated that the eviction will leave her homeless, nor has she stated that compensation for any alleged harm would be an inadequate remedy. In fact, in her complaint Allen asks that if Soll does not appear, the Court order Soll to pay $30,700 in damages which is "the actual amount of money . . . invested in [the] home . . . ." (Compl. at 4, Docket No. 1.) This suggests to the Court that money damages are an adequate remedy.

C. Balance of the Harms

The third *Dataphase* factor is whether the harm to the movant in the absence of injunctive relief outweighs the potential harm that granting injunctive relief may cause to the non-movant. *See Dataphase*, 640 F.2d at 114. The balance of the harms in this case does not favor granting injunctive relief. Allen has not alleged that she or her family would be unable to secure other housing in the event of an eviction. *Baumgarten*, 2007 WL 1490487, at *5. Further, the last-minute nature of the motion suggests that granting injunctive relief would cause harm to the owners of the property who have waited to take possession for the time required by the state court.

D. Public Interest

The final *Dataphase* factor is whether injunctive relief is in the public's interest. *See Dataphase*, 640 F.2d at 114. Allen does not specifically address this issue, but she

does discuss the difficulties involved in understanding the ownership of mortgages, and the harm that can be caused when mortgage processes, particularly on the secondary mortgage market, are not transparent. The Court understands Allen's complaint to be an argument against fraudulent, opaque, and aggressive lending tactics, and agrees that it is in the interest of the public for the Court to prevent such harms when they are properly presented. However, Allen has not presented sufficient evidence suggesting that these harms have occurred here. The Court is sympathetic to the difficulties Allen has faced in determining the ownership of the mortgage on the house she lives in, and the proper procedures for challenging an eviction. As stated, it is possible that colorable claims can be proven. However, Allen has not shown at this time that she is entitled to a temporary restraining order.

## ORDER

Based on the foregoing, all the records, files, and documents pertaining thereto, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for a temporary restraining order [Docket No. 3] is **DENIED**.

2, The Clerk of Court is **DIRECTED** to send a copy of this Order to Wilford & Geske, 8425 Seasons Parkway, Suite 105, Woodbury, MN 55125.

**IT IS FURTHER HEREBY ORDERED** that:

3. The Wilford & Geske law firm serve a copy of this Order on all named defendants.

4. Defendants shall file answers to the complaint or otherwise plead within twenty-one (21) days after being served with the complaint as provided for in Rule 12 of the Federal Rules of Civil Procedure.

DATED: December 2, 2010                  ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                          JOHN R. TUNHEIM
                                                                 United States District Judge